IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KERI MICHELLE STRICKLAND, Administratix of the ESTATE OF PRESTON ELLIOT STRICKLAND, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:11CV889 |
| DAE HOLDINGS, LLC d/b/a DAE INDUSTRIES, | ) ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on a Motion to Approve Settlement Agreement [Doc. #44] and a Motion for Order Extinguishing Workers' Compensation Lien [Doc. #46] filed by Plaintiff Keri Michelle Strickland, Administratix of the Estate of Preston Elliot Strickland ("Plaintiff"). The Court held a hearing on both Motions on June 10, 2013, where counsel for Plaintiff, counsel for Defendant DAE Holdings, LLC ("Defendant" or "Defendant DAE"), and counsel for unnamed party Commerce & Industry Insurance Company ("Commerce & Industry") were present and addressed the pending Motions. Based on the arguments submitted to the Court in the parties' briefings and at the hearing, the Court will grant Plaintiff's Motion to Approve Settlement Agreement [Doc. #44] and will grant in part and deny in part Plaintiff's Motion for Order Extinguishing Workers' Compensation Lien [Doc. #46].

I.	FACTUAL BACKGROUND

The underlying wrongful death action brought by Plaintiff against Defendant arose from an accident occurring on May 28, 2010, and resulting in the death of Preston Elliot Strickland ("Mr. Strickland"). (Pl.'s Compl. [Doc. #1], at ¶ 1). At the time of the accident, Mr. Strickland was employed as an aviation mechanic by Triad International Maintenance Corporation ("TIMCO"). (Pl.'s Compl. [Doc. #1], at ¶ 10). As part of his employment responsibilities, Mr. Strickland performed maintenance on a large military aircraft known as a KC-10. (Pl.'s Compl. [Doc. #1], at ¶ 16). Due to the size of the KC-10 aircraft, it can only be accessed by working off of a large, elevated work platform known as a "tail dock." (Pl.'s Compl. [Doc. #1], at ¶ 17). TIMCO purchased the KC-10 tail dock at issue in this action from Defendant DAE. (Pl.'s Compl. [Doc. #1], at ¶ 20) Prior to selling the tail dock to TIMCO, Plaintiff alleges that Defendant refurbished the tail dock and made certain modifications to enable the tail dock to fit the KC-10 aircraft, as it had originally been designed for use with a different aircraft model. (Pl.'s Compl. [Doc. #1], at ¶ 20).

The design of the tail dock sold to TIMCO by Defendant included an elevated platform approximately twenty-five and one-half feet above the ground and consisting of thirteen sliding panels. (Pl.'s Compl. [Doc. #1], at ¶¶ 22-23). In addition to the thirteen sliding panels, the tail dock also had a moveable platform that was positioned on rollers above the sliding panels and could be rolled above the sliding panels. (Pl.'s Compl. [Doc. #1], at ¶ 25). Plaintiff alleges in her Complaint that "[d]ue to the configuration of the [m]ovable [p]latform over the [s]liding [p]anels, it was not readily discernable that an opening could be created below the [m]ovable

2

[p]latform if the [s]liding [p]anels located immediately beneath the [m]ovable [p]latform had been retracted." (Pl.'s Compl. [Doc. #1], at ¶ 29). Further, Plaintiff alleges that an "inherent and latent defect" existed in the tail dock because the sliding panels and the movable platform were painted in identical, non-contrasting colors. (Pl.'s Compl. [Doc. #1], at ¶ 36).

On the morning of May 28, 2010, Mr. Strickland, along with his direct supervisor, was in the process of preparing the tail dock provided by Defendant to work on a tail section of a KC-10. (Pl.'s Compl. [Doc. #1], at ¶ 35). While standing on top of the tail dock, twenty-five feet above ground, Mr. Strickland and his supervisor began to push the moveable platform on the tail dock forward toward the tail section of the KC-10. (Pl.'s Compl. [Doc. #1], at ¶ 35). However, Mr. Strickland was unaware that sliding panels located immediately beneath the movable platform had been fully retracted and were open, creating a large opening directly beneath the movable platform. (Pl.'s Compl. [Doc. #1], at ¶ 35). As Mr. Strickland pushed the movable platform forward, the opening suddenly appeared, and Mr. Strickland lost his balance and fell through the opening approximately twenty-five feet to the concrete below. (Pl.'s Compl. [Doc. #1], at ¶ 35). Mr. Strickland died from his injuries, and he is survived by his wife, Keri Michelle Strickland, and two minor children from the marriage. (Pl.'s Compl. [Doc. #1], at ¶ 9).

On October 21, 2011, Plaintiff, as the administratratix of the Estate of Mr. Strickland, filed this action against Defendant DAE for negligence and breach of implied warranty, alleging that during the process of refurbishing the tail dock, Defendant negligently painted certain portions of the tail dock in non-contrasting colors, which camouflaged the existence of the

3

opening below the surface of the movable platform. Plaintiff further alleges that Defendant was negligent in failing to provide warning signs and safety stickers to warn users of the dangerous hazards associated with the tail dock.

In its Answer to Plaintiff's Complaint, Defendant denied Plaintiff's allegations and asserted various affirmative defenses, including contributory negligence, lack of privity, and the statute of repose. (Def.'s Answer [Doc. #12], at ¶¶ 68-74). Further, Defendant asserted a "Plea of Employer Negligence," alleging that Mr. Strickland's employer, TIMCO, was actionably negligent in causing Mr. Strickland's death by failing to provide proper safety equipment and training. (Def.'s Answer [Doc. #12], at ¶¶ 75-76).

On February 1, 2013, Plaintiff filed her instant Motion to Approve Settlement Agreement [Doc. #44], informing the Court that Plaintiff and Defendant reached a settlement agreement in the underlying matter and seeking the Court's approval of said agreement. Plaintiff then filed her instant Motion for Order Extinguishing Workers' Compensation Lien [Doc. #46], asking the Court to extinguish any subrogation lien arising from the payment of accrued and prospective workers' compensation benefits following Mr. Strickland's death. The Court will address these pending Motions in turn.

II. MOTION TO APPROVE SETTLEMENT AGREEMENT

Plaintiff's Motion to Approve Settlement Agreement [Doc. #44] asks the Court to approve the Settlement Agreement reached in the underlying wrongful death action between Plaintiff and Defendant. Pursuant to North Carolina General Statute § 28A-13-3(a)(23), a personal representative of an estate is entitled to maintain actions for the wrongful death of a

decedent and, in doing so, may compromise or settle any such claims.  See N.C. Gen. Stat. § 28A-13-3(a)(23). However, "[u]nless all persons who would be entitled to receive any damages recovered . . . are competent adults and have consented in writing, any such settlement shall be subject to the approval of a judge of the court or tribunal exercising jurisdiction over the action." N.C. Gen. Stat. § 28A-13-3(a)(23). Here, because Plaintiff's two minor beneficiaries[1] are entitled to receive damages recovered from the settlement, the proposed Settlement Agreement between Plaintiff and Defendant is subject to this Court's approval.

In the proposed Settlement Agreement, Plaintiff and Defendant agree to settle the underlying wrongful death action for a sum of $2,000,000. In support of the reasonableness of this figure, Plaintiff stresses the inherent risks in proceeding to trial, noting that the affirmative defenses asserted by Defendant, including employer negligence, contributory negligence, and the statue of repose, created "at least some risk that a jury could come back with a substantially reduced verdict or a verdict in favor of the Defendant." (Mem. in Support of Motion to Approve [Doc. #45], at 6). Further, a Declaration by Plaintiff contends that the Settlement Agreement will "help [her] in bringing some closure to the loss of [her] husband and further provide [her] and [their] children with the financial security that would not exist without this settlement." (Declaration of Keri Michelle Strickland [Doc. #44-1], at 3).

Based on the above-noted arguments along with those presented by counsel at the hearing, the Court agrees that the $2,000,000 sum in the Settlement Agreement is reasonable and

---

[1] These minor beneficiaries are the children of Mr. Strickland and Keri Michelle Strickland, a daughter, L.S., who was four (4) years old at time of Mr. Strickland's death, and a son, N.S., who was seven and one-half (7 1/2) weeks old at the time of Mr. Strickland's death.

in the best interest of the minor beneficiaries. However, the Court must also consider the reasonableness of the distribution of the $2,000,000 sum under the terms of the Settlement Agreement. Pursuant to North Carolina General Statute § 28A-18-2(a), upon the termination of a wrongful death action, the proceeds must be distributed as follows:

> (1) to the reimbursement of the estate for expenses incurred in pursuing the action; (2) to the payment of attorneys' fees incurred in pursuing the action; (3) to the payment of burial expenses of the deceased; (4) to the payment of reasonable hospital and medical expenses incident to the injury resulting in death not to exceed $4,500; and (5) any remaining balance is to be distributed as provided in the Intestate Succession Act.

See N.C. Gen. Stat. § 28A-18-2(a). Under North Carolina's Intestate Succession Act, if an intestate is survived by a spouse along with two or more children, the surviving spouse shall receive the first $30,000 of all personal property, and the remaining personal property exceeding $30,000 shall be divided evenly between the surviving spouse and the surviving children. See N.C. Gen. Stat. § 29-14.

The proposed Settlement Agreement distributes the $2,000,000 sum in accordance with North Carolina statutory requirements, first distributing the necessary funds for reimbursements and disbursements and then distributing the remaining settlement amount in accordance with North Carolina's Intestate Succession Act. Further, the Settlement Agreement provides that the funds to be disbursed to the two minor beneficiaries, L.S. and N.S., will be "structured in a manner to provide periodic payments made according to a schedule acceptable to the Plaintiff." (Amendment to Settlement Agreement [Doc. #58-1], at 17). This provision appears to be reasonable and in the best interest of the minor beneficiaries.

Accordingly, after considering the Settlement Agreement itself along with the arguments

6

presented by counsel in briefing and at the hearing, the Court concludes that the Settlement Agreement is fair and reasonable to the interests of the minor beneficiaries. As such, the Court will grant Plaintiff's Motion to Approve Settlement Agreement [Doc. #44], and the Settlement Agreement [Doc. #58-1] will be approved by the Court.

III. MOTION FOR ORDER EXTINGUISHING WORKERS' COMPENSATION LIEN

Also before the Court is Plaintiff's Motion for Order Extinguishing Workers' Compensation Lien [Doc. #46].[2] At the time of Mr. Strickland's accident, TIMCO's workers' compensation insurance was provided by Commerce & Industry. Following the accident, beginning in July of 2010, Commerce & Industry began providing Plaintiff and her two minor children with survivor benefits under the North Carolina Workers' Compensation Act. Pursuant to a Consent Opinion and Award entered by the North Carolina Industrial Commission, Commerce & Industry has paid and continues to pay Plaintiff and her minor children benefits at the weekly rate of $604.38. (Order from Industrial Commission [Doc. #47-19], at 6-8). With respect to Plaintiff, these benefits will continue through January of 2018, and with respect to Plaintiff's minor children, the benefits will continue until each minor reaches the age of eighteen. (Mem. In Opposition to Motion to Extinguish, [Doc. #56], at 2-3).

Pursuant to North Carolina General Statute § 97-10.2(j), "in the event that a settlement

---

[2] The Court notes that the disposition of this Motion has no effect on the Court's previous disposition of Plaintiff's Motion to Approve Settlement Agreement [Doc. #44]. Instead, the Settlement Agreement itself provides that while "the final Settlement Amount is dependent upon the Court's disposition of the lien claimed by the workers' compensation insurer," the "ruling of the Court on the motion to extinguish the workers' compensation lien shall in no way affect the finality of the Release Agreement." (Amendment to Settlement Agreement [Doc. #58-1], at 18). Thus, the Court's disposition of Plaintiff's Motion to Extinguish does not affect its previous approval of the Settlement Agreement.

7

has been agreed upon by [an] employee and a third party, either party may apply" to the Court for a determination of the appropriate amount of a workers' compensation lien. See N.C. Gen. Stat. § 97-10.2(j). Here, Plaintiff has filed a Motion for Order Extinguishing Workers' Compensation Lien [Doc. #46] asking the Court to extinguish any subrogation lien arising from the payment of accrued and prospective workers' compensation benefits by Commerce & Industry to Plaintiff and her two minor children. Accordingly, the Court must determine the appropriate amount, if any, of Commerce & Industry's workers' compensation lien.

Generally, the purpose of North Carolina's Workers' Compensation Act is to provide "a swift and certain remedy to an injured worker." In re Estate of Bullock v. C.C. Mangum Co., 188 N.C. App. 518, 522, 655 S.E.2d 869, 872 (N.C. Ct. App. 2008). Section 97-10.2 of the Workers' Compensation Act was "designed to secure prompt, reasonable compensation for an employee and simultaneously to permit an employer who has settled with the employee to recover such amount from a third-party tort-feasor." Radzisz v. Harley Davidson of Metrolina, Inc., 346 N.C. 84, 89, 484 S.E.2d 566, 569 (1997). However, "the [Workers' Compensation Act] in general and N.C.G.S. § 97-10.2 specifically were never intended to provide the employee with a windfall of a recovery from both the employer and the third-party tortfeasor." Id.

Still, North Carolina General Statute § 97-10.2(j) grants courts discretionary authority to reduce or eliminate a workers' compensation lien, "even if the result is a double recovery for the plaintiff." Holden v. Boone, 153 N.C. App. 254, 257, 569 S.E.2d 711, 713 (N.C. Ct. App. 2002). In addition to considering the amount of costs of the third-party litigation to be shared between the employee and the employer, North Carolina General Statute § 97-10.2(j) requires a court to

8

consider the following factors in determining the appropriate lien amount:

> (1) the anticipated amount of prospective compensation the employer or workers' compensation carrier is likely to pay to the employee in the future; (2) the net recovery to plaintiff; (3) the likelihood of the plaintiff prevailing at trial or on appeal; (4) the need for finality in the litigation; and (5) any other factors the court deems just and reasonable.

See N.C. Gen. Stat. § 97-10.2(j). The power given to courts under this provision is not "unbridled or unlimited." Allen v. Rupard, 100 N.C. App. 490, 495, 397 S.E.2d 330, 333 (N.C. Ct. App. 1990). Instead, in considering each of these factors, a court must "make a reasoned choice, a judicial value judgment, which is factually supported." Id. Accordingly, "in considering a request for disbursement under subsection (j), [a court] must enter an order with findings of facts and conclusions of law sufficient to provide for meaningful appellate review." Id. However, "there is no mathematical formula" a court must follow in making its determination, and the statute "plainly affords the trial court discretion to determine the appropriate amount of [a] defendant's lien." Cook v. Lowe's Home Centers, Inc., 209 N.C. App. 364, 367, 704 S.E.2d 567, 570 (N.C. Ct. App. 2011). With these standards in mind, the Court will address each relevant factor under § 97-10.2(j), taking into account the arguments presented by the parties in briefing and at the hearing.

With regard to the first factor, the anticipated amount of prospective compensation the employer or workers' compensation carrier is likely to pay to the employee in the future, Commerce & Industry contends that Plaintiff and her two minor children will receive sightly over $300,000 in workers' compensation benefits from Commerce & Industry, including both past and future payments. Based on this figure, Commerce & Industry submits that the

9

appropriate value of its workers' compensation lien is $101,949.57.[3] With regard to the second factor, the net recovery to Plaintiff, based on the Amended Statement of Receipts and Disbursements submitted by Plaintiff with the Settlement Agreement, Plaintiff's net recovery after costs and attorneys' fees and without consideration of any workers' compensation lien would be $1,181,571.44. (Amended Statement of Receipts and Disbursements [Doc. #58-2], at 2).

Based on these figures, Plaintiff argues that the net recovery does not adequately compensate Plaintiff even before the application of any lien. To support this contention, Plaintiff relies on the calculations of her economic expert, Dr. J.C. Pointdexter, who estimated that the economic loss alone suffered as a result of Mr. Strickland's death, which includes only lost income and lost services, totals $2,669,703. (Report of Dr. J.C. Pointdexter [Doc. #47-15], at 13). This figure does not account for additional compensation categories that would have been recoverable had the underlying wrongful death action proceeded to trial, including loss of protection, care, and society. (Mem. in Support of Motion to Extinguish [Doc. #47], at 12). Thus, Plaintiff argues that the settlement amount does not adequately compensate Plaintiff and supports the extinguishment of the lien.

However, Commerce & Industry notes that its lien "reflects slightly more than 5 percent of the $2 million settlement plaintiff has negotiated." (Mem. In Opposition to Motion to

---

[3]Commerce & Industry reached this $101,949.57 figure by factoring in a proportionate share of the costs of litigation and the attorneys' fees in the underlying action and reducing the present value of future benefits in accordance with the Industrial Commission's commuted value table. Plaintiff has not disputed these calculations, but instead argues that no lien amount is appropriate.

10

Extinguish, [Doc. #56], at 6-7). Further, Commerce & Industry contends that the settlement amount "leaves plaintiff and her children with a net recovery of survivor benefits and settlement proceeds in excess of $1.4 million." (Mem. In Opposition to Motion to Extinguish, [Doc. #56], at 6-7). Thus, Commerce & Industry argues that Plaintiff will still be adequately compensated even if the full amount of the lien is enforced.

Taking these arguments into account and considering the relevant facts and figures, the Court finds that the first and second factors support the reduction, but not the complete extinguishment, of the lien. Plaintiff's contentions regarding the inadequacy of the $2,000,000 settlement amount in light of the damages available at trial are persuasive, as Plaintiff could have recovered damages for multiple compensation categories at trial. However, based on the $2,000,000 settlement amount, even if the Court were to allow the entire amount of the workers' compensation lien asserted by Commerce & Industry, Plaintiff would still have a net recovery, after costs and attorneys' fees, in excess of $1,000,000. Based on these figures, the Court concludes that the first two factors support the reduction, but not the complete extinguishment, of the workers' compensation lien.[4]

---

[4] The Court notes that many of the cases cited by Plaintiff in support of extinguishing the workers' compensation lien based on the first two factors involve factual scenarios in which the settlement amount received by the plaintiff was either less than or only slightly higher than the asserted workers' compensation lien. See Helsius v. Robertson, 174 N.C. App. 507, 621 S.E.2d 263 (N.C. Ct. App. 2005) (extinguishing a workers' compensation lien where the plaintiff's settlement amount was $50,000 and the workers' compensation lien was $53,128.40, which would have left the plaintiff with no recovery); In re Biddix, 138 N.C. App. 500, 530 S.E.2d 70 (N.C. Ct. App. 2000) (extinguishing a workers' compensation lien based on inadequate compensation to a plaintiff where the plaintiff's settlement amount was $25,000 and the workers' compensation lien was $18,718.43). In contrast, here, Plaintiff would receive in excess of $1,000,000 even if the full amount of the lien was allowed.

With regard to the third factor, the likelihood of the plaintiff prevailing at trial or on appeal, the central dispute regarding this factor is that of the employer negligence defense asserted by Defendant DAE in the underlying case. Potential employer negligence can be considered by the Court in weighing the likelihood of success at trial or on appeal. See Wiggins v. Bushranger Fence Co., 126 N.C. App. 74, 483 S.E.2d 450 (N.C. Ct. App. 1997) (using the likelihood of a successful employer negligence defense at trial as a supporting factor in extinguishing a workers' compensation lien). In its Answer to Plaintiff's Complaint, Defendant DAE asserted that TIMCO, Mr. Strickland's employer, was actionably negligent in causing Mr. Strickland's death. Had the underlying matter proceeded to trail and a jury found that the negligence of TIMCO was a proximate cause of Mr. Strickland's death, the Court would have reduced any monetary judgment against Defendant by the amount Commerce & Industry would have otherwise been entitled to receive, and Plaintiff's recovery from Defendant would have been "free of any claim by [Commerce & Industry][5]." See N.C. Gen. Stat. § 97-10.2(e). Based on this potential outcome, Plaintiff contends that the strength of the employer negligence defense supports the extinguishment of the workers' compensation lien. However, Commerce & Industry disputes the strength of the employer negligence defense and contends that had the case proceeded to trail, a jury would have likely found Defendant DAE's negligence alone was the proximate cause of Mr. Strickland's death.

On the issue of employer negligence, the Court considered that following Mr. Strickland's accident, the North Carolina Department of Labor Division of Occupation Safety and Health

---

[5]Simply put, a successful employer negligence defense at trial would have precluded Commerce & Industry from recovering any reimbursement for the benefits paid to Plaintiff.

12

("OSHA") issued TIMCO a two-part citation for violations of 29 C.F.R. 1910.29(a)(3)(v), 29 C.F.R. 1910.29(a)(3)(vii), and 29 C.F.R. 1910.23(c)(1) based in part on TIMCO's failure to place guardrails around the opening of the tail dock, thereby exposing Mr. Strickland and other employees to an unguarded fall hazard. (OSHA Citation [Doc. #47-11], at 10-11). TIMCO was fined for these violations and paid a total amount of $8,190.00 in penalties. (OSHA Citation [Doc. #47-11], at 2). Further, the OSHA Compliance Officer's Report noted that "the employer should have known of the condition [of the tail dock]" because "[f]rom the ground looking up to the bottom of the scaffold, an inspection of the scaffold should have picked-up on the six red sliding floor panels over the white frame of the scaffold." (Plaintiff's Reply [Doc. #61-2], at 3). While the Court recognizes that an employer's violation of OSHA regulations does not constitute negligence *per se*, the citations can be used as evidence to establish the standard of care and the custom in the relevant industry. See Cowan v. Laughridge Const. Co., 57 N.C. App. 321, 325, 291 S.E.2d 287, 290 (N.C. Ct. App. 1982).

In addition to considering the OSHA Report and citations issued to TIMCO, the Court also considered the various expert reports and depositions submitted by the parties. Generally, the portions of the expert reports and depositions cited by Plaintiff conclude that TIMCO was negligent in failing to comply with OSHA standards and in failing to implement proper safety procedures before placing the tail dock into use. (See, e.g. Report of Lawrence Albert Weaver [Doc. #47-13]). However, the portions of the expert reports and depositions cited by Commerce & Industry conclude that Defendant DAE, and not TIMCO, was negligent in creating a latent condition by painting certain portions of the tail dock in non-contrasting colors

and by failing to provide TIMCO with an instruction manual or safety warnings regarding the tail dock. (See, e.g. Deposition of John J. Goglia [Doc. #60-2]).

Along with expert reports and depositions, the Court also considered deposition testimony of TIMCO employees on the issue of employer negligence. Notably, deposition testimony from Scott Frietag, TIMCO's ground support equipment manager, indicated that Mr. Frietag asked Defendant DAE for a safety manual shortly after the purchase of the tail dock, but only followed up on this request after Mr. Strickland's accident. (Deposition of Scott Frietag [Doc. #61-7], at 10-11). Further, Mr. Frietag testified that he asked DAE installation crew members about the lack of safety warning stickers on the tail dock, and he was told by the installation crew that there were no warning stickers. However, Mr. Frietag conceded that he did not follow up with anyone after speaking with the installation crew regarding the stickers and instead put the tail dock into use without a safety manual or warning stickers. (Deposition of Scott Frietag [Doc. #61-7], at 5-7). This evidence indicates that TIMCO was aware that Defendant DAE failed to provide a safety manual and safety warning stickers with the tail dock but put the tail dock into use despite this knowledge.

Considering the evidence discussed above, the Court finds that had the case proceeded to trial, a successful employer negligence defense appears to have been reasonably likely. This conclusion is supported by the entirety of the evidence and arguments presented to the Court, including the OSHA citations issued to TIMCO following the accident and TIMCO's decision to place the tail dock into service without having first received any safety manuals or warning stickers. However, based on the conflicting expert reports and depositions before the Court

14

regarding negligence as well as evidence indicating that Defendant DAE failed to provide TIMCO with a safety manual or warning stickers despite requests, the Court recognizes that the potential strength that the employer negligence defense would have had at trial is not entirely determinative. As such, the Court finds that the third factor supports the reduction, but not the complete extinguishment, of the workers' compensation lien.

With regard to the fourth factor, the need for finality in the litigation, Plaintiff stresses that the need for finality contributed to her decision to reach a settlement in the underlying matter, as "she and her children need to focus on rebuilding their lives following this tragedy." (Pl.'s Br. in Support of Motion to Extinguish [Doc. #47], at 12). Because the need for finality motivated Plaintiff to accept a settlement that she asserts does provide adequate compensation, Plaintiff contends that the fourth factor supports the extinguishment of the lien. However, throughout the litigation in the underlying matter, Plaintiff received weekly benefits of $604.28 from Commerce & Industry. These benefits provided financial assistance to Plaintiff and likely "strengthened her bargaining position against defendant by providing her with the financial means to negotiate the most favorable settlement possible." (Commerce & Industry's Br. in Opp. to Motion to Extinguish [Doc. #56], at 14). Accordingly, the Court finds that a consideration of the fourth factor does not support the complete extinguishment of the lien. While Plaintiff was motivated to accept a settlement in order to obtain closure and finality, Plaintiff was provided with workers' compensation benefits throughout the underlying proceeding that likely facilitated her ability to engage in a prolonged litigation and as a result aided in the negotiation of a more favorable settlement. Thus, the fourth factor does not

15

support the extinguishment of the lien.

Finally, the fifth factor to be considered by the Court includes any other factors deemed just and reasonable. Here, Plaintiff argues that Commerce & Industry's decision to not actively participate in the underlying litigation supports the extinguishment of the lien. Specifically, Plaintiff argues that despite not participating in the underlying litigation, Commerce & Industry "seeks to reap an inequitable financial payment from Plaintiff's settlement." (Pl.'s Br. in Support of Motion to Extinguish [Doc. #47], at 17). However, Commerce & Industry contends that it chose not to appear in the matter after learning that Plaintiff had retained competent counsel and that TIMCO's in-house counsel was willing to provide assistance to Plaintiff's counsel in gathering evidence to pursue Plaintiff's claim. (Commerce & Industry's Br. in Opp. to Motion to Extinguish [Doc. #56], at 3). Indeed, evidence indicates that TIMCO's in-house counsel attended and defended the depositions of TIMCO witnesses and made TIMCO employees available to Plaintiff's counsel. (Commerce & Industry's Br. in Opp. to Motion to Extinguish [Doc. #56], at 4).

With regard to the fifth factor, the Court finds that Commerce & Industry's decision not to actively participate in the litigation does not support the complete extinguishment of the lien. As a threshold matter, the Court notes that the lien amount of $101,949.57 asserted by Commerce & Industry was calculated by proportionally reducing the actual amount to be paid in workers' compensation benefits by the amount of Plaintiff's projected attorneys' fees in the underlying matter. Through this calculation, Commerce & Industry made an effort to bear a portion of Plaintiff's underlying litigation costs. Further, there is evidence that TIMCO's in-

16

house counsel assisted Plaintiff and provided Plaintiff with information and access throughout the litigation. However, the Court also recognizes the difficult and time-consuming nature of the underlying litigation pursued by Plaintiff. Based on these considerations, the Court, nevertheless, determines that the fifth factor supports the reduction, but not the complete extinguishment, of the workers' compensation lien.

IV.     CONCLUSION

Based on the foregoing discussion, and after a consideration of the relevant evidence with regard to each factor under North Carolina General Statute § 97-10.2(j), the Court, in its discretion, concludes that a reduction of Commerce & Industry's workers' compensation lien, but not a complete extinguishment, is appropriate in this case. Accordingly, the Court will order that Commerce & Industry's workers' compensation lien be properly set at $67,966.38, which reflects a one-third reduction from the $101,949.57 originally claimed by Commerce & Industry. The Court will further order that Plaintiff shall satisfy Commerce & Industry's $67,966.38 workers' compensation lien out of the proceeds of the settlement in the underlying action in accordance with the terms of the Settlement Agreement.[6]

IT IS THEREFORE ORDERED that Plaintiff's Motion to Approve Settlement

---

[6]The Court will leave the appropriate calculations to be performed by the parties based on the enforceable lien amount of $67,966.38. However, to provide guidance to the parties in determining the appropriate distribution of settlement funds in light of the lien, the Court notes that any lien amount enforced would be deducted from the total settlement amount of $2,000,000. After a deduction of the $67,966.38 lien amount from the total settlement amount, $1,932,033.62 will remain for the purposes of calculating the appropriate attorneys' fees and deducting the set costs and expenses of $142,238.10 and the reimbursement for funeral expenses of $9,523.79. After these deductions, the net recovery to Plaintiff is then to be distributed in accordance with the North Carolina Intestate Succession Act.

Agreement [Doc. #44] is GRANTED, and the Settlement Agreement [Doc. #58-1] is approved by the Court.

IT IS FURTHER ORDERED that Plaintiff's Motion for Order Extinguishing Workers' Compensation Lien [Doc. #46] is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion for Order Extinguishing Workers' Compensation Lien [Doc. #46] is GRANTED to the extent it seeks a reduction of Commerce & Industry's workers' compensation lien and DENIED to the extent it seeks the complete extinguishment of Commerce & Industry's workers' compensation lien.

IT IS FURTHER ORDERED that Commerce & Industry's workers' compensation lien is properly set at $67,966.38, which reflects a one-third reduction from the $101,949.57 originally claimed by Commerce & Industry.

IT IS FINALLY ORDERED that Plaintiff shall satisfy Commerce & Industry's $67,966.38 workers' compensation lien out of the proceeds of the settlement in the underlying action in accordance with the terms of the Settlement Agreement.

This, the 9th day of July, 2013.

_____
United States District Judge

18

Case 1:11-cv-00889-JAB-JEP   Document 65   Filed 07/09/13   Page 18 of 18